# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CATHERINE CRAWFORD,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**Case No. 2:18-cv-308**
**JUDGE GEORGE C. SMITH**
**Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Plaintiff, Catherine Crawford, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## I. BACKGROUND

On October 23, 2014, Plaintiff filed an application for disability insurance benefits, alleging that she had been disabled since December 21, 2013. (R. at 418–24.) Plaintiff's application was denied initially and upon reconsideration. (R. at 314–49.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 314–49.) Administrative Law Judge

("ALJ") Noceeba Southern held a hearing on February 22, 2017, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 71–106.) On July 28, 2017 the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 18–33.) On February 7, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 3–9.) Plaintiff then timely commenced the instant action.

## II. RELEVANT MEDICAL RECORDS

Wheaton Wood, M.D., Plaintiff's treating psychiatrist, met with Plaintiff on six occasions between July 2015 and December 2015. (R. at 861.) In October 2015, Dr. Wood opined that Plaintiff was disabled. (R. at 832.) On March 8, 2016, Dr. Wood completed a mental impairment questionnaire. (R. at 861–66.) Dr. Wood opined that Plaintiff was seriously limited in the mental abilities and aptitude needed to perform unskilled work: carry out very short and simple instructions, maintain attention for two hours, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, and deal with normal work stress. (R. at 863.) Dr. Wood further opined that Plaintiff was unable to meet competitive standards for maintaining regular attendance and being punctual within customary, usually strict tolerances, and completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id*.) As to Plaintiff's mental abilities and aptitude needed to perform semiskilled and skilled work, Dr. Wood opined that Plaintiff was unable to meet competitive standards in carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing

2

with stress of semiskilled and skilled work and that she had a limited but satisfactory ability to understand and remember detailed instructions. (R. at. 864.) In Plaintiff's mental abilities and aptitude needed to perform particular types of jobs, Dr. Wood opined that Plaintiff was seriously limited in her ability to interact appropriately with the general public; she had limited but satisfactory ability to maintain socially appropriate behavior, travel in unfamiliar place, and use public transportation; and that she had an unlimited or very good ability to adhere to basic standards of neatness and cleanliness. (*Id*.)

As to functional limitations, Dr. Wood opined that Plaintiff had marked limitations in activities of daily living and in maintaining concentration, persistence or pace and extreme limitations in maintaining social functioning and episodes of decompensation within a twelve-month period. (R. at 865.) According to Dr. Wood, Plaintiff would miss four or more days of work because of her impairments. (R. at 86 –66.)

## IV. ADMINISTRATIVE DECISION

On July 28, 2017, the ALJ issued her decision. (R. at 18–33.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (R. at 20.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

3

had not engaged in substantially gainful activity since her amended alleged onset date of April 7, 2014. (R. at 20–21.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: psoriasis; degenerative disc disease of the lumbar spine; minor multilevel spondylosis of the thoracic spine; chronic obstructive pulmonary disease; obstructive sleep apnea; morbid obesity; osteoarthritis; anxiety; depression; posttraumatic stress disorder; borderline personality disorder. (R. at 21.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21–23.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except can complete simple, routine tasks; can complete some multistep tasks; can interact frequently, but superficially, with the public, coworkers and supervisors; can perform low stress work, meaning only occasional changes and occasional decisionmaking required; requires goal-based work, not at a production rate pace; would be off task for 7 percent of the day.

(R. at 23–24.) In reaching this determination, the ALJ accorded "little weight" to Dr. Wood's opinions, stating that his opinion that Plaintiff was disabled was reserved to the Commissioner and, despite his treating relationship, his other opinions are not consistent with the available

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

medical evidence summarized in the ALJ's opinion.  (R. at 30.)  The ALJ also noted that Dr. Wood had not seen Plaintiff in almost four months at the time he provided the opinions.  (*Id.*)

Relying on the VE's testimony, the ALJ determined that even though Plaintiff is unable to perform her past relevant work, other jobs that exist in significant number in the national economy that she can perform.  (R. at 31–32.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 32.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances two contentions of error. Plaintiff first contends that the ALJ erred in weighing Dr. Wood's opinion from March 2016 because the ALJ failed to provide good reasons for discrediting his treating source opinion. (ECF No. 7 at 7–12.)[2] Plaintiff next argues that the ALJ also failed to properly evaluation the opinions of the examining mental health sources of record. (*Id*. at 13–16.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical

---

[2] The undersigned understands that Plaintiff does not challenge the ALJ's rejection of Dr. Wood's opinion from October 2018 that Plaintiff was disabled (R. at 832), which the ALJ properly rejected. (R. at 30.) *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that the ALJ properly rejected a treating source's opinion that the claimant was disabled because such a determination was reserved to the Commissioner).

6

evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).[3] If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

---

[3] "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)). Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect.

7

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Dr. Wood, Plaintiff's psychiatrist, met with Plaintiff on six occasions between July 2015 and December 2015. (R. at 861.) As previously discussed, the ALJ assigned "little weight" to Dr. Wood's opinions, reasoning as follows:

> In October 2015, the claimant's psychiatrist, Wheaton Wood, M.D., opined that the claimant was disabled (19F/52). That opinion is given little weight because disability determination is reserved strictly to the Commissioner of Social Security (404.1527(d)). In March 2016, Dr. Wheaton opined that the claimant has mostly serious limitations with the mental abilities and aptitudes required for unskilled

work and is essentially unable to meet competitive standards with regard to abilities needed for semi-skilled and skilled work (20F/3-4). He stated that the claimant has serious limitations interacting with the general public, but has satisfactory, if limited, abilities to maintain socially appropriate behavior, to travel in unfamiliar places and to use public transportation (20F/4). He opined that, overall, the claimant has marked limitations with activities of daily living and concentration, persistence or pace and extreme limitations with social functioning (20F/5). Dr. Wood stated that the claimant would miss more than four days of work per month due to her impairments (20F/6). These opinions are given little weight because, despite the doctor's treating relationship with the claimant, they are not consistent with the available medical evidence summarized above. The undersigned notes that Dr. Wood had not seen the claimant in almost four months at the time he provided the opinions (20F/1, 6).

(R. at 30.)

The undersigned finds that the ALJ did not provide good reasons for rejecting Dr. Wood's opinion issued in March 2016, regarding Plaintiff's limitations in her mental abilities and aptitude to perform certain kinds of work and her functional limitations. The ALJ's conclusory statement that Dr. Wood's findings were "not consistent with the available medical evidence summarized above" does not constitute "good reasons" for discounting his opinions:

> Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* [*Blakley v. Comm'r*, 581 F.3d 399, 408 (6th Cir.2009)] Put simply, it is not enough to dismiss a treating physician's opinion as "incompatible" with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010); *see also Rogers*, 486 F.3d at 245–46 (finding that the ALJ did not give good reasons for rejecting treating source's opinion where the "ALJ noted only that '[o]nce again, in assessing the evidence in light of Section 404.1527 of the Social Security Administration Regulations No. 4, the record does not support the limitations of the severity suggested by Dr. Stein'" because such explanation "does not satisfy the notice requirement discussed in Social Security Ruling 96–7p and reaffirmed by this

9

Court in *Wilson*"); *Huntington v. Comm'r of Soc. Sec.*, No. 18-11873, 2019 WL 1388956, at *4 (E.D. Mich. Mar. 4, 2019) ("[C]ourts have recognized that unsupported, conclusory statements that medical opinions are inconsistent with the evidence of record fall short of satisfying the treating physician rule's 'good reasons' requirement.") (citations omitted), *adopted by* 2019 WL 1379906 (E.D. Mich. Mar. 27, 2019); *Kepic v. Comm'r of Soc. Sec.*, No. 1:17-cv-2422, 2018 WL 6002363, at * (N.D. Ohio Oct. 31, 2018) ("Although the ALJ discussed some of the medical evidence of record on the prior pages . . . it is not clear which records she contends are inconsistent with which of" the treating physician's opined limitations), *adopted by* 2018 WL 5997905 (N.D. Ohio Nov. 15, 2018); *Phillips v. Comm'r of Soc. Sec.*, No. 3:16 CV 514, 2017 WL 951422, at *9 (N.D. Ohio Mar. 10, 2017) (stating that "[w]hen an ALJ determines a treating physician's opinion is not entitled to controlling weight, he must provide support to refute either the opinion's objective basis or its consistency with other record evidence" and that "[c]onclusory statements in this regard, however, are not sufficient") (citations omitted). "This is not to say that evidence does not exist to support the ALJ's conclusions, but only that [s]he has not made h[er] reasons for so deciding sufficiently clear." *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 439 (6th Cir. 2018).

However, under some circumstances, a violation of the good reasons rule may constitute "harmless error." *Wilson*, 378 F.3d at 547; *see also Friend*, 375 F. App'x at 552–53 (analyzing whether an ALJ's failure to comply with the good reasons rule amounts to harmless error). The United States Court of Appeals for the Sixth Circuit has found these circumstances existing in the three following scenarios: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner

10

has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547.

Here, the ALJ's violation of the good reasons rule is not harmless. As to the first circumstance constituting harmless error, the undersigned cannot conclude that Dr. Wood's opinion is patently deficient. The ALJ gave "little weight" to Dr. Wood's opinion and therefore did not totally reject it. *Cf. Allen v. Comm'r of Soc. Sec.*, No. 1:13-cv-171, 2014 WL 1093139, at *6 (N.D. Ohio Mar. 17, 2014) ("Here, the ALJ did not totally reject Dr. Svete's opinions by assigning them no weight, but rather he accepted them up to a point, ascribing 'lesser' weight to Dr. Svete's opinion than to the other opinions previously mentioned. In such a case, the 'patently deficient' harmless error exception does not apply."). Moreover, Dr. Wood's opinion is "not a complete outlier amongst the medical opinions proffered[,]" *Shields*, 732 F. App'x at 440, and there is at least some evidence to support Dr. Wood's opinion, including generally consistent history of and treatment for depression, anxiety, and posttraumatic stress disorder complaints as well as difficulties with traveling, socializing, and handling workplace pressure. (R. at 26, 30, 611, 618–25, 777, 779, 874, 3163–71.) *See Miller v. Berryhill*, No. 3:16-cv-00094, 2017 WL 1021313, at *9 (S.D. Ohio Mar. 16, 2017) (concluding that a treating opinion was not patently deficient where the "record contains evidence consistent with [the treating] opinion"); *Congrove v. Comm'r of Soc. Sec.*, No. 2:15-cv-2630, 2016 WL 3097153, at *5 (S.D. Ohio June 3, 2016) ("If treatment notes support the physician's findings, an opinion is not patently deficient."), *adopted by* 2016 WL 3944485 (S.D. Ohio, July 15, 2016). While the Commissioner nevertheless suggests that the ALJ properly rejected Dr. Wood's opinion because it was a check-off report that lacked any supporting explanation or citation, Dr. Wood does provide some, albeit

limited, explanations. (R. at 861–66.) Accordingly, it cannot be said that Dr. Wood's opinion was so patently deficient that the ALJ's failure to properly weigh it constitutes harmless error.

Next, the ALJ did not adopt Dr. Wood's opinion or make findings consistent with the opinion. As previously discussed, the ALJ accorded only "little weight" to Dr. Wood's opinion. (R. at 30.) Notably, the RFC did not incorporate limitations opined by Dr. Wood, including, *inter alia*, inability to carry out detailed instructions and missing four or more days per month. (R. at 23–24, 861–65.)

Finally, the undersigned cannot conclude that the goal of § 1527(d)(2) has been met. With respect to this circumstance, "'the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's *analysis* of a physician's other opinions or his *analysis* of the claimant's ailments.'" *Shields*, 732 F. App'x at 438 (quoting *Friend*, 375 F. App'x at 551) (emphasis added). Here, while the ALJ does address other medical opinions, including examining mental health sources and state-agency psychological consultants, her reasoning for the weight assigned to those opinions is unclear. (R. at 29–31.) The ALJ simply states that those opinions were consistent or inconsistent with the available medical evidence that is recited earlier in her decision with no analysis or citation to specific medical evidence. (R. at 24–31.) For the reasons previously discussed, the ALJ's discussion in this regard therefore provides no insight as to why Dr. Wood's opinion warranted only "little weight" and therefore does not provide "a clear understanding of the reasons for the weight given a treating physician's opinion[.]" *Friend*, 375 F. App'x at 551; *see also Shields*, 732 F. App'x at *441 ("Merely listing alternative medical opinions—none of which were ultimately adopted—does not elucidate the ALJ's reasons for discounting the" treating physician's opinion); *Blackburn v. Colvin*, No. 5:12-

12

cv-2355, 2013 WL 3967282, at *7 (N.D. Ohio July 31, 2013) (finding that the ALJ's "recitation of evidence does not cure the failure to offer any meaningful analysis as to why the opinions of treating physicians were rejected" and it "is not altogether clear" as to how the evidence was inconsistent"); *cf. Osterland v. Colvin*, No. 3:15-cv-990, 2016 WL 4576092, at *11 (N.D. Ohio Aug. 11, 2016) (stating that "simply suggesting that Dr. Hoy's own treatment notes support rejection of his opinion without a substantive explanation or analysis, an ALJ essentially invites a reviewing court to perform its own de novo review of the record and to build an argument that supports the ALJ's decision to discredit a treating source" and declining to do so). Accordingly, remand is necessary because the undersigned cannot follow the ALJ's reasoning or determine what specific evidence the ALJ relied upon when discounting Dr. Wood's opinion. *Rogers*, 486 F.3d at 243 (explaining that a purpose of the good reason rule is to ensure "meaningful appellate review of the ALJ's application of the rule") (internal quotation marks omitted).

Finally, to the extent that the Commissioner now provides his own analysis of these records and opinions (*see* ECF No. 11 at 8–16), "this Court shall not accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal quotation marks and citations omitted) (brackets in original).

For these reasons, it is **RECOMMENDED** that Plaintiff's first contention of error as to the ALJ's assessment of Dr. Wood's opinion be **SUSTAINED**.[4]

---

[4] This finding obviates the need to for in-depth analysis of Plaintiff's second contention of error regarding the weight given to the examining mental health sources. The Court, however, encourages the Commissioner to address these various arguments if the Court ultimately remands the case.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: July 26, 2019	/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE